# United States District Court

NORTHERN ___ DISTRICT OF ___ TEXAS

SEALED

FILED
JAN 25 2019
CLERK, U.S. DISTRICT COURT
By ___ Deputy

UNITED STATES OF AMERICA

V.

SANJAY NANDA

**COMPLAINT**

CASE NUMBER: 3-19-MJ-
3-19MJ077-BT

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about September 1, 2015, in Tarrant County, in the Northern District of Texas, the defendant, for the purpose of executing and carrying out a scheme and artifice to defraud and to obtain money and property by means of false material and fraudulent pretenses, representations, and promises, did knowingly, and with intent to defraud, cause to be transmitted in interstate commerce by means of wire and radio communication, writings, signs, signals and sounds, in violation of Title 18, United States Code, Section 1343.

I further state that I am a Special Agent with the Federal Bureau of Investigation (FBI), and that this complaint is based on the following facts:

See attached Affidavit of Special Agent Stephen Hanley, FBI, which is incorporated and made a part hereof by reference.

Continued on the attached sheet and made a part hereof:    XX Yes    No

_____
Stephen Hanley
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence, on this 25th day of January, 2019, at Dallas, Texas.

_____
HONORABLE REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT

I, Stephen M. Hanley, a Special Agent with the Federal Bureau of Investigation ("FBI"), Dallas, Texas, being duly sworn, depose and state as follows:

## AGENT BACKGROUND

1. I have been a Special Agent with the FBI since 2002 and a federal law enforcement officer since 1998. Presently I am assigned to a squad in Dallas, Texas, that is responsible for investigating complex financial crimes. During my tenure with the FBI, I have conducted and participated in investigations of individuals and organizations alleged to have committed a wide variety of white-collar crimes, including various forms of fraud (government, insurance, health care, mail, wire, bank, investment and corporate fraud), tax evasion, money laundering, public corruption, and civil rights violations. I have received specialized training in financial analysis, financial investigative methods, and techniques for disguising and transmitting the proceeds of illegal activities, and I regularly employ this training in my investigation of white-collar offenses.

2. I respectfully submit this affidavit in support of an application pursuant to Federal Rule of Criminal Procedure 4 for a Criminal Complaint and warrant for the arrest of Sanjay Nanda. I submit that based on the facts set forth below, and the reasonable inferences from those facts, there is probable cause to believe that during the period beginning in or about September 2011 and ending in or about October 2015, Nanda knowingly and intentionally executed a scheme to defraud his then-employer, Sabre Corporation, of approximately $5,900,000, using false and fraudulent pretenses and

representations, in violation of 18 U.S.C. § 1343 (wire fraud) and other federal criminal offenses.

3. The information contained in this affidavit is based on my review of documents and other records obtained during the course of the investigation, my training and experience, and information provided by other law enforcement officers and by witnesses interviewed in the course of the investigation, including employees of Sabre Corporation. I have not included in this affidavit all facts gathered in the course of the investigation, or all relevant facts known to me, but, instead, limited the facts to those necessary to establish probable cause for the requested arrest warrant.

## RELEVANT AUTHORITIES

4. Title 18 United States Code, Section 1343, Wire Fraud, provides in pertinent part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . transmits or causes to be transmitted by means of wire, . . . communication in interstate or foreign commerce, and writings, . . . for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

**[NOTHING FURTHER ON THIS PAGE]**

## PROBABLE CAUSE TO BELIEVE SANJAY NANDA EMBEZZLED FUNDS FROM SABRE CORPORATION IN VIOLATION OF 18 U.S.C. 1343

5. Sabre Corporation (Sabre) is a travel-technology company with its global headquarters in Southlake, Texas, in the Northern District of Texas.

6. In or around July 2010, Sabre hired Sanjay Nanda as senior Vice-President for Airline Solutions. Nanda's principal responsibility during his tenure with Sabre was to oversee a project in which the company was providing technical services to two merging airlines. As a Senior Vice President, Nanda had the authority to hire consultants/contractors, and to approve and authorize, without further review, contractor invoices for payment.

7. During Nanda's tenure with Sabre, he worked out of an office located in a company facility in Southlake, Texas. Nanda left Sabre's employ in or about October 2015.

8. In late September-early October 2011, Nanda called a friend, Vinod George, and raised the possibility of George doing some consulting work for Sabre. From about 2001 to 2005, George sub-let a room in a house Nanda was renting in Boston, Massachusetts; the two became good friends and stayed in touch as each changed jobs and moved to other parts of the country. According to George, who was interviewed by the FBI in August 2017, during this conversation Nanda related that there were problems with a vendor hired to work on the airline merger project. Nanda suggested that Sabre hire George as a consultant to serve as project manager.

Complaint Affidavit (S. Nanda) – p. 3

9. In late October 2011, Nanda called George and mentioned there was a billing issue on the project. On October 26, 2011, George received an e-mail from a Sabre employee stating that the company could not process an invoice George purportedly had sent because it did not display an invoice number, and asking George to resubmit the invoice. The invoice, which was attached to the e-mail, was for work purportedly performed for Sabre by a company called Sadak, LLC. According to George, he had not been offered or accepted any project or position with Sabre at the time, had not done any work for Sabre, and had not submitted any invoices to Sabre. George assumed that the invoice was related to the billing issue Nanda mentioned, and forwarded the e-mail to Nanda.

10. Two months later, in December 2011, George received another call from Nanda, who explained that now there was an issue with a check on the project. According to George, Nanda stated that Sabre had mistakenly issued a check made payable to George that was intended for the current vendor, and that if the vendor was not paid, he would stop work on the project. Nanda asked George to send an e-mail to his subordinate to try and rectify the situation, and provided George with language to use in the e-mail; George cut-and-pasted the proposed language in an e-mail, which he sent to the specified Sabre employee. George claimed that he did not pay attention to a later e-mail from the same Sabre employee advising him that a new check would be mailed to him at the Post Office box associated with Sadak, LLC.

11. According to George, sometime after 2011 he asked Nanda to remove his name from the project. Nanda told George he had taken steps to do so, but that it was a process, and Sabre was working on it.

Complaint Affidavit (S. Nanda) – p. 4

12. Nonetheless, over the course of the next several years, George continued to received e-mails periodically from Sabre relating to Sadak, many reporting than an invoice had been paid. George claimed that he did not pay attention to these e-mails because he had no contractual or employment relationship with Sabre, and had not done any work for the company. George assumed the e-mails were being sent due to an administrative mix-up, and he forwarded them to Nanda.

13. Among these e-mails, George acknowledged, was one in September 2012 forwarding a Master Services Professional Agreement between Sabre and Sadak, LLC, for consulting work. The agreement listed George as the "Principle Manager" signing on behalf of Sadak, a Georgia company with a Post Office box in Atlanta, Georgia; it listed Nanda as the signatory on behalf of Sabre. During his interview in August 2017, George confirmed that he never signed this document, and that he never opened a post office box in Atlanta, Georgia. Again, George claimed that he forwarded the e-mail to Nanda, based on Nanda's assurances that he would take care of it.

14. During the course of the investigation, I reviewed records obtained from the Office of the Secretary of State for the State of Georgia. These records indicate that Sadak, LLC, was incorporated in the State of Georgia in February 2005 by a law firm retained by Sanjay Nanda. The incorporation documents list Nanda as the Registered Agent for the company. The records also indicate that the company was dissolved for non-payment in 2008, but two years later Nanda paid the back taxes and submitted a hand-written reinstatement petition to the Secretary of State.

Complaint Affidavit (S. Nanda) – p. 5

15. Records provided by Sabre evidence that between September 2011 and September 2015, the company processed for payment and paid approximately 78 invoices purportedly submitted by Sadak, LLC, claiming approximately $5,902,000 for consulting services performed for Sabre. Each invoice listed George as the company representative; it also listed as the company address the post office box in Atlanta, Georgia listed on the fictitious Master Services Professional Agreement. George confirmed that none of the signatures on the invoices were his.

16. According to information provided by Sabre, each of the Sadak invoices, prior to payment, had to be approved by Nanda. After approving the invoice, Nanda or one of his subordinates submitted the invoice to the Sabre payment processing office, located in the Northern District of Texas. Based on Nanda's approval and authorization, employees in that office entered the relevant data in the Sabre automated payment system which, in turn, caused a wire communication to be sent to a Sabre bank account located outside the State of Texas, directing payment to a Sadak account in a bank in Atlanta, Georgia.

17. The first several invoices were paid by check, sent to the Atlanta post office box listed on the Sadak invoice. The vast majority of the invoices, however, were paid by ACH transfer from a Sabre account to a Wells Fargo checking account ending in 7489 located in Atlanta, Georgia. Records obtained from Wells Fargo indicate that this account was opened in the name of Sadak Ventures, LLC, at a bank branch in Atlanta, Georgia, on December 5, 2011. The account documents name Sanjay Nanda as the company Senior Vice President; he also was the sole authorized signatory on the account.

The e-mail address associated with the account was "sadak.george@gmail.com." According to George, he never created or used this e-mail address.

18. I have compared the fictitious invoices submitted to Sabre with the deposits to the Wells Fargo 7489 account. With very few exceptions, the invoice amounts exactly match the deposits received from Sabre.

19. Records obtained from E-Trade Financial indicate that Nanda transferred almost all of the funds Sabre paid to Sadak into an account in his name at E-Trade Financial. From December 2011 to October 2015, Nanda transferred by bank wire over $5.8 million from the Wells Fargo 7489 account to his personal E-Trade account ending in 7446.

## CONCLUSION

Based on the facts stated herein, I respectfully submit that there is probable cause to believe that Sanjay Nanda knowingly, and with intent to defraud, devised a scheme to defraud and to obtain money by means of false and fraudulent pretenses and representations, and material omissions, in violation of 18 U.S.C. § 1343. Specifically, the object of the scheme was to embezzle money from Sabre by creating invoices from a fictitious vendor, Sadak Ventures, LLC, for consulting services that were never performed, and submitting the invoices to Sabre for payment, causing Sabre, by interstate

or foreign wire communications, to issue unauthorized checks to a Sadak account under the sole control of Nanda.

Respectfully submitted,

Stephen Hanley, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on January 25, 2019:

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE